Mr. Chief Justice, and may it please the Court, while this case is about the FDCPA, it is also fundamentally about the relationship between this Court and Congress. That relationship has long been governed, in part, by two important presumptions relevant here. First, that Congress legislates against the backdrop of the common law. And second, that Congress legislates aware of this Court's decision. When Congress enacted the FDCPA in 1977, this Court had long ago adopted a common law rule eventually known as the Discovery Rule, applicable to cases of fraud and concealment. Citing to and quoting the Bailey decision of this Court from 1875, in Holmberg in 1946, this Court stated that it had long ago adopted as its own the Old Chancery Rule, that where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there will be no special circumstance or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. The Court then continued in Holmberg, explaining unequivocally this equitable doctrine is read into every Federal statute of limitation, and added even those where, quote, an explicit statute of limitation for bringing suit, close quote. The United States concedes, as it has in prior cases, that there is a common law Discovery Rule applicable to fraud and concealment. In the decision below, the Third Circuit never mentioned the Holmberg case. Its analysis began and ended with two words in Section 813d, violation occurred. The Third Circuit understood that those two words, by implication, not expressly, but by implication, that's at Appendix Page 8, displaced the common law Discovery Rule applicable to fraud. In reaching this conclusion, the Third Circuit deployed what I believe is a false dichotomy. What the Third Circuit described on the one hand is an occurrence rule, and on the other hand, a common law Discovery Rule. And in the view of the Third Circuit, if a Congress deploys in a statute a so-called occurrence rule, a common law Discovery Rule is presumed to be displaced. The Third Circuit cited no decision of this Court in setting forth this dichotomy between an occurrence rule and a common law Discovery Rule. That analysis is at Page 6 of the appendix. That conclusion of the Third Circuit is also in opposition to this Court's decision in 1918 in the Exploration case, which is discussed at length in our brief, in the briefs of the other parties. There, that is, I think, fairly characterized as an occurrence rule. The statute in Exploration ran from the date of issuance of a land patent. So that was a date certain tied to facts. That, under the theory of the Third Circuit, and my friends, is an occurrence rule, and there the Court determined that the common law Discovery Rule should  Sotomayor, Mr. Gantt, you keep saying fraud and self-concealing as if they're alternative rules. I think of there being multiple equitable doctrines, equitable tolling, equitable estoppel, and what I call the self-concealing fraud, which was the one mentioned in Exploration, argued by the government in Gabelli and in other cases. Are you creating a fourth? That every case, every Federal statute inherently says, for whatever reason, if you didn't discover the fraud, equity could let you have a Discovery Rule? No. We're not intending to proffer a rule. In fact, what we're attempting to do is advance the application of the already established rule, the Bailey-Holmburg rule, and my refrain. I call it the self-concealing rule. Is there the fraud you committed is by its nature self-concealing. Is that an accurate way of stating that rule? I think so. We're not intending to differentiate. All right. Then what do you make of footnote five in the Third Circuit's opinion? Because four of the, I guess they're justices or judges there, judges, would have remanded to allow the district court to consider whether he would be entitled to rely on this doctrine being the self-concealing rule. Because our President had not previously recognized that a defendant's self-concealing conduct may be a basis for equitable tolling. That seems to me that they understood the same thing I did, which is that there might be a self-concealing rule, but that you had waived it. And that's why those four judges weren't voting to remand. How do you read that any differently? This is as good a time as any to get to an important issue here, which is the confusion – understanding the relationship between what I'm calling the common law discovery rule, the Bailey-Holmburg rule. And the refrain I was using of fraud or concealment comes from TRW directly, which is why I was using it, but not intending to create a different doctrine. All of the parties here and the scholars amicus brief that was submitted all agree that there has been at times confusing use of terminology. And I think it is impeding an understanding of what is really going on in the courts below in this case and in the Third Circuit's discussion of these issues, including in footnote 5 that you referred to, Your Honor. So let me, if I may, in trying to answer your question, set forth what I think is the best understanding of the discovery rule on the one hand, the equitable tolling rule on the other hand, and then try and bring it directly to your question of what I understand the Third Circuit to have been doing in footnote 5. Our view is that the best understanding of the discovery rule is that it applies when the plaintiff is unaware of their cause of action or the facts giving rise to the cause of action here, the violation, because of fraudulent conduct or self-concealing conduct by the defendant. And in that situation, the clock for the statute of limitations does not begin to run at all. Equitable tolling, on the other hand, applies, we think, best understood in a situation where the plaintiff is aware of the violation giving rise to a cause of action, but for some reason, applying the elements set forth in this Court, exercised due diligence or diligently pursued his or her rights, but was unable because of some extraordinary circumstance to timely file suit. Then, if the doctrine is deemed to apply, then the untimely filing is forgiven. And in that circumstance, the statute of limitations is best understood to have begun to run, but then be tolled or abated because of the circumstances. That's our understanding of these rules, and that's the same understanding, I think, that the scholars set forth. And it's under that view, equitable tolling would be best understood as not applicable to this situation. Now, this Court, I respectfully submit, has sometimes used the label of equitable tolling to describe circumstances that I think are best understood as the Bailey-Holmberg discovery rule. And that has caused confusion here and in courts below, and I think it did cause confusion in the Third Circuit. And the Third Circuit appeared to operate under the view, at the time this case was decided, that self-concealing conduct did not qualify. That there had to be some separate act apart from the elements of the offense in addition that was concealing. An example that I'm familiar with from my own practice is in antitrust cases, where although they use the label of fraudulent concealment, which I think is best understood, in those circumstances, you have a violation alleged of, say, section 1 of the Sherman Act, a conspiracy. In most cases, when there's a statute of limitations argument that the conduct went back more than the four years provided in the statute, there's an argument about whether the conspiracy was concealed. Most courts there require some additional action in addition to the conspiracy itself. Here, what they're saying is that the discovery rule is equitable. I believe it is. But I think it is equitable, but also properly understood as an exercise in statutory interpretation. I don't think they're mutually exclusive. I'll grant you that. So the discovery rule could be part of a statute, but if it's not part of a statute, there exists, I think you're saying, an equitable discovery rule as well that is akin to, but maybe not the same as, equitable tolling. Is that your argument? Yes to the last part of that. Can you just be real clear on the answer? Because clarity, we do need clarity. I will do my best. I agree that that's useful for everybody. There's a distinction between statutory discovery rule, obviously, and the common law discovery rule. The statutory discovery rule is employed by Congress from time to time. It was present in TRW, for example. That was, in my understanding, the basis for the ruling in that case principally was that Congress had decided to statutorily write in a discovery rule and then applying traditional tools of statutory interpretation determined that it wouldn't then also add on the common law discovery rule. So when there is an absence, like here, of a statutory discovery rule, then the question becomes, did Congress intend to permit or displace the addition or, in the words of Gabelli, the grafting onto, which I don't view as pejoratively, but I think my friends on the other side attempt to use it that way, grafting onto or importing into the statute of common law discovery rule. When you use common law discovery, is that equivalent to equitable discovery? I think it's the doctrine that originated in equity but also applied to cases of law. The Court said that back in Bailey. The doctrine had its origins in equity, applied to law, and it is applied. And here's where I think that it's both equitable in origins and I think in nature, but also fundamentally an exercise in statutory interpretation, because the touchstone is whether or not intended, Congress intended to foreclose or permit the application of the common law doctrine to the statute in the absence of some express indication. Ginsburg. If you are arguing an across-the-board discovery rule applies to the FDCPA, I think the TRW weighs very heavily against you. So you could be arguing cross-the-board discovery rule, or you could accept that there is a fraud exception. You seem to be arguing the first, that there's a discovery rule for all FDCPA cases. Justice Ginsburg, we mean the latter, so. You accept the fraud exception. But then the government tells us that this case doesn't fit within the fraud exception. And it clearly does. So just to be clear, we're not arguing that every FDCPA action is timely so long as the plaintiff was unaware. What we're saying is that if they were unaware because of circumstances that fit within the Bailey-Holmberg framework, fraud that prevented the plaintiff from knowing about their cause of action under that longstanding doctrine, then the plaintiff is permitted to file out of time. Ginsburg. It's not a violation. What happened here, serving the debtor at an address that was not the debtor's? That's not a violation of the FDCPA, is it? Unto itself, it might not be. But we have a very different circumstance in this case. So the facts that are alleged, and you'll recall that this case comes to the Court on a ruling on a 12b-6 motion. So, of course, the Court construes the allegation, accepts the allegations as true. The allegations as made and as understood by the lower courts were as follows. The respondent retained a process server to serve, filed a complaint against my client. There was an affidavit of service filled out that said that the head of the household had been served, and that was false. And we allege in the facts below assert that they had reason to know that that was false. So they filed a false affidavit of service, and that false affidavit of service was then the basis for a default judgment. So it's those two actions together, the filing of a false affidavit of service and then obtaining a default judgment on that basis that we contend violates Sections 807 and 808 of the statute, which are codified at Section 1692 E and F. Those prohibit, E prohibits any false, deceptive or misleading representation or means of pursuing a debt. Breyer, that isn't the issue. I don't think the issue is, is your basic claim a claim of fraud? And it doesn't sound it. I mean, did you, who did you fraud? The judge? Yes. I've never heard of a case brought under this where the fraud, you, I mean, the cases that were brought where somebody said, give me your land and I will, because the land has gold or something on it, that was a lie. So buy my land. It has gold on it. And they sell the land and it doesn't have gold on it. That's sort of fraud. Okay? But I've never heard of a fraud case. I'm not saying it may be actionable. I mean, it may be that you recover under the statute. It may be a bad thing. But it doesn't sound like common law fraud to me. So is there something where the person defrauded is a judge because the process server, rightly or wrongly, filed the wrong name? But that's what you're saying is a common law fraud. Yes. And then what is the case that says a process server who fills in the wrong name and fools the judge is the person who hired the process server has committed common law fraud? Well, it's not – with respect, Justice Breyer, it's not just the process server and the allegations go further than an innocent mistake. And the other side argues that this was an innocent mistake. I'm asking you what here brings your case within the rubric of common law fraud? So if we had Lord Cook in front of us, you see, he would say, oh, I recognize this old man still recognizes that this is common law fraud. Right. That's what I want to know. And our allegation is that the knowing misrepresentation on the affidavit of service or reckless representation, we cite to Blaslack. Who represented? Who writes the representation? The process server or the other person? The process server signs effectively under penalty of perjury that the representations are true, they were false. And who makes the representations? The process server makes the representations. So is your client the process server? No. Is that their client? It is not. That was the next point, which was that then the attorneys are the ones who file the affidavit of service, which we contend they had reason to know was false. And then the attorneys then prosecute the case in obtaining the apology. No, I know the latter part. I got the latter part. That's the harm. But the fraud consists of an attorney knowingly accepting the false statement of a process server. Yes. Now, the closest case that you have found that calls that activity common law fraud is? We didn't look for a specific case. You didn't? Because it's so obvious that it's common law fraud? Well, you may not find this satisfactory, but we weren't the only ones here who thought that this constituted fraud. The Solicitor General's brief, I believe it's at page 26. No, no. I'm not that. I'm just trying to find out for myself. And I'm not certain. That's why I'm asking. Right. And so the Solicitor General called this akin to fraudulent concealment. Akin to. Now, wait. That's a totally different thing. Your discovery? Look, my Bible on this is Judge Posner's opinion in the Cotta case. So if that's wrong, you better stop me now. But I've read that. I don't know whether it's wrong because I haven't read it. So I won't stop you. Oh, well, it's a very good list of all these different doctrines, equitable estoppel, equitable this, and there are like six of them or something. And one of them, the thing that you're talking about now, is a special thing called, what's it called? Undiscovered fraud. Now, I thought an element of that is that the basic underlying thing is common law fraud. And that's what I'm trying to investigate now. That if you have nothing more to say, I have nothing more to say, because if I knew more about it, I wouldn't ask the question. I don't have a case. I wish I did. Obviously, that is something that could be, and we respectfully assume it should be, addressed on remand. Not only the Solicitor General, but one of the amici, the major trade association for the creditors, the ACA, also acknowledged in their brief that what's that issue here? It has a name. It's called sewer service. It's so prevalent that it has a name. There was testimony before Congress when the FTCPA was enacted. A representative from the FTC came to Congress at the beginning of the hearings that led to the enactment of the statute. And in August of 1976 said that this phenomenon, which is that issue here, sewer service, is a major problem in many urban areas. But you said the statement was the process server. The process server was told by the creditor, serve process at this address. So it wasn't the process server didn't make it up. The process server was told where the process should be served. The process server, and I think it's helpful to understand for context here, there was an original suit that was withdrawn, which also had a defective affidavit of service, and then a subsequent one that led to the default judgment at issue here. It was the same process. Ginsburg. But still, the prosecutor, the process server was just following the directions of the person who engaged the process server. Well, they were certainly following the direction to serve process. We don't know. There's nothing in the record that indicates the substance of the discussion. We do know that the first service was attempted at an address, and it falsely represented that the plaintiff was personally served. He was not. It also represented he was black, according to the affidavit of service. He's not. He's Caucasian. It represented he was 51 years old. He was in his late 30s at the time. That was at a end. So they had reason. And then that suit was withdrawn, we believe, because they knew that the affidavit of service was false and that the plaintiff didn't actually live at that address. Then a new suit was filed and a new affidavit of service, the one at issue, was filed. Sotomayor, I know it is terribly confusing because of the confusion of the use of terms. That's why I called it a self-concealing fraud. It's not the violation at issue that's self-concealing. It's how the violation came about that could be by self-concealing fraud, correct? Yeah. Isn't that your point? Yes. We believe that the common law discovery rule, the Bailey-Holmburg rule, can apply either if the fraud is an element of the offense, which it effectively is, under our view, under subsections E and F, or it can be separate and apart in addition to the elements of the offense. So here, it seems there have been several questions, so I want to, if I could, just make this clear, because I think the facts are important and they should be addressed on remand. We're not saying we win on remand or the other side will get to make its arguments, including that we don't fit within the contours of fraud. But we believe that this is close. The decision below was you don't get a common law discovery rule applied to the statute, period. That was wrong. That should be reversed and we should have an opportunity then to have arguments about these issues, whether the approach of the view of Justice Breyer is right or at least your arguing, you know, for argument's sake, the view of Judge Posner that this might fall outside common law fraud. We don't think it does. We cited Black's Law Dictionary. In my view, this falls squarely within the contours of common law fraud as described in Black's Law Dictionary, which is a misrepresentation. It was a knowing misrepresentation of the Court. They served at an address that they knew was not his. They said they served the head of the household, and that was false. And then they used that false affidavit made sworn under oath. The attorneys then went into court and used it as the basis for obtaining a default judgment, which then prevented my client from obtaining a mortgage, which he still doesn't have to this day. You've referred to remand a few times. I think the other side's argument is that the statute itself does not have a discovery rule and that any equitable discovery rule, or as you're terming it, common law discovery rule that might exist unless Congress expressly displaces it, was not raised in the Third Circuit. Your response to that? I'm sorry. What wasn't raised in the Third Circuit? Equitable discovery. It is true that equitable tolling per se was not addressed in the Third Circuit. But Holmberg and Bailey were both cited to the Third Circuit, and at the time it was clear in the Third Circuit. I think what they're saying, and this may not be a winning argument, but I just want to get your response to it, I think what they're saying is those were raised in the context of statutory interpretation. Reading the statute, it does not contain a discovery rule. There may be still an equitable discovery rule, but you didn't separately, I think they're saying this, you didn't separately raise that kind of equitable discovery argument. Your response to that? Is that wrong? They are wrong in their understanding of the operation of the two words violation occurred and its effect on whether the common law discovery rule applies. We say that that language is inconclusive with respect to the question of whether or not Congress intended to permit or preclude the application of the common law discovery rule, and we then urge the Court to apply traditional tools of statutory interpretation, to look to the statute's purpose, to eliminate these debt collection practices that are prohibited, the structure of the statute. We discussed this at length in our briefs. And based on those factors, we believe it's clear that Congress would have intended for the common law discovery rule to apply to this statute. And what about your petition in this Court? Because as I read your petition in this Court, it was more about the general statutory interpretation question, whether there is a discovery rule that applies generally in this statute, than it is about whether certain equitable exceptions might continue to exist. Yes. You are referring to the petition for certiorari? Yes. The petition for certiorari clearly presented the discovery rule for consideration. Well, but again, what did that mean? As I read the petition, it really did not address whether there was an equitable exception of the kind that the Third Circuit might have thought had been waived. Well, that certainly wasn't how it was intended, and you may know I didn't draft that. I don't read it that way, and I know for certain that that was not intended to exclude that. May I finish? Sure. What was intended with the petition was to raise the question precisely as I attempted to present it this morning, which is whether or not Congress intended to permit or foreclose the application of the common law discovery rule to the statute. And we contend that Congress clearly did not intend to foreclose it. Thank you, counsel. Thank you. Mr. Waratsky. Mr. Chief Justice, and may it please the Court. Mr. Gant and I agree that this case is about the relationship between this Court and Congress. Congress provided in the FDCPA that the statute of limitations would begin to run when the violation occurs, not when it is discovered. That answers the question presented in the cert petition. The plain meaning of violation occurs concerns when the defendant commits the violation, not when the plaintiff learns of it. Unlike more ambiguous phrases like claim accrues or liability arises, violation occurs simply can't be read any other way. And we know Congress itself understands violation occurs that way, because in other statutes, including the 1978 Right to Financial Privacy Act, Congress used the phrase violation occurs to distinguish an occurrence-based limitations period from a discovery-based one. Like Justice Ginsburg and Justice Kagan, I understand the question presented here to be whether an across-the-board discovery rule applies to the FDCPA. That's the only issue that the Third Circuit decided. The cert petition does not cite Bailey or Holmberg, doesn't mention the word fraud. If it had, we might have had an argument in our brief in opposition for why this case doesn't present a fraud case and therefore would be an inadequate vehicle to consider that question. So the only question before this Court is what should be, whether there's an across-the-board discovery rule. Despite all of that, Mr. Gantt focused his argument this morning on the fraud cases. There are a number of reasons why the fraud cases don't ultimately help him. I'd like to start out focusing on one, which is those cases are properly understood as equitable tolling cases, not as discovery rule cases. That's how this Court most recently characterized them in cases like ANZ and in Lozano. And it matters for four reasons that the terminology be used correctly and that we distinguish between discovery rule and equitable tolling. The four reasons are the following. First, the two doctrines, the discovery rule and equitable tolling, are different concepts with different sources. The discovery rule is about how to read the words Congress writes in a statute. It's a statutory interpretation question. That's the exercise that TRW was engaged in. Equitable tolling is about excusing noncompliance with the words that Congress has chosen. It is an application of courts' inherent equitable powers confirmed in the Judiciary Act, which exist independent of what Congress has said in any particular statute of limitations. As a result of that, and this is my second point, the discovery rule and equitable tolling have different scopes. The discovery rule was not equitable tolling. Ginsburg, but I thought that the Justice Scalia, in my opinion, in TRW, spoke about the discovery rule, not equitable tolling, the exception to the discovery. The discovery rule could apply in cases of fraud. I think what TRW was talking about was that the discovery rule might apply to fraud statutes. That's different from saying that there is a discovery rule in any case of fraud that happens to arise under a non-fraud statute like the FDCPA. The words violation occurred, occurs, have to mean the same thing no matter what the underlying type of FDCPA violation. It can't mean violation occurs in a non-fraud claim, but violation occurs or is discovered in a fraud claim. And that's why the way to think of excusing noncompliance with a limitations period in a situation that did present fraud would be as equitable tolling, because equitable tolling is a case-by-case doctrine in which courts use their inherent equitable powers to excuse noncompliance with the statute on particular facts. Kagan. I mean, there might be variants of equitable tolling, mightn't there? I mean, one variant is there were extraordinary circumstances, an earthquake hit, and so I couldn't file this suit in time, and so you should toll the statute of limitations until I can. I mean, that would be one. And then a different one would be this kind of I couldn't possibly have known that the statute of limitations had even started to run because there was fraud committed against me. Is that right? I mean, you can put them all under an umbrella label, but those are two different things, aren't they? I agree that they would be under the same category of equitable relief, because in both situations what a court would be doing is not applying the language that Congress wrote. Congress didn't say anything about earthquakes, but Congress would be excusing compliance with the language that Congress wrote. I'm sorry. The court would be excusing compliance with the language that Congress wrote based on either the earthquake or fraud. What those have in common is that they are under the bucket of equitable relief from what Congress wrote, rather than in. And is your view that those are foreclosed by this statute, or is your view simply that those arguments were waived and this case has nothing to do about them, with them? Our argument is that those arguments were waived. They're not properly before this Court. The only question before this Court is how to read the words that Congress wrote. And when Congress wrote the words violation occurred, it didn't leave the door open to read that across the board in every FDCPA case as violation occurs or is discovered.  Kagan. So you're not taking a position one way or the other about whether those equitable defenses can be raised? I don't think that is presented by this case. The issue hasn't been briefed. The Third Circuit didn't – the Third Circuit held that it was waived. It's not presented in the cert petition and simply not part of this case. So it's an open question if you have a typical, I don't know if it's typical, but equitable tolling situation, the hurricane, you know, whatever, even the courthouse's closed sort of thing, even though you're dealing with a statute of the sort you have here, that those claims could certainly be raised, or at least you think it's an open question. We are not arguing that that's foreclosed by this statute. We're saying that issue is simply not presented by this case. And similarly, the Bailey kind of equitable rule. You're also saying – you're also saying that you're just not saying? We're saying that it wasn't preserved and therefore is not properly before this Court at this stage. There's no reason to remand on a question that all members of the Enbank Third Circuit Court held was waived. Four members went out of their way to point out in footnote 5 that they would have said it was preserved, but it wasn't. But I suppose what you have to maintain, though, is that equitable tolling has a higher or different threshold than simply a discovery rule. And that is actually – I said I had four reasons why I think the discovery rule and equitable tolling are different doctrines. That's the third of them, is that I think equitable tolling has a higher bar. Equitable tolling applies only in extraordinary circumstances, which, as this Court said in Rotella, which distinguished between the discovery rule and equitable tolling, that's a virtue of equitable tolling, that it's the exception, not the rule. If the Court is going to exercise its inherent equitable powers to override the language that Congress has written, that should be something that only happens in unusual, exceptional circumstances. Breyer, my recollection of Cata and so forth, one, the statute might provide for tolling. That's the argument in front of us. You say no. He says yes. You're going on the words. A second basis would be equitable tolling. The courthouse blows up or it's a hurricane. That's not here. Forget it. The third is sometimes called equitable estoppel, and that's no man should benefit from his own wrong. Oh, that might apply here, except for the fact that the Third Circuit said absolutely waived, he never raised it, and so forth. And he doesn't even claim he raised that one. But there is a fourth one. And the fourth one, which Justice Scalia said in this case, is out of Bailey, which applied from Lord Cook or something, and is of ancient origins. And that's if your basic claim is a claim of fraud. If your basic claim is a claim of fraud, there is a tolling rule. Now, one, was that ever raised clearly? Probably not. Two, is the basic claim here, was a claim that this is an uncollectible debt, not that it was a fraudulent debt. I take it that the basic claim was not fraud. But I'm not sure on either of those points. So should we send it back on those points? No, and let me unpack that question and make three different points about it. First, the Bailey line of authority, as Judge Posner described it in that Seventh Circuit case, still fits within the category of equitable relief from the statute, rather than interpreting the statute. And the only question presented in the cert petition. Set aside even what happened in the Third Circuit, in the cert petition here is the question of statutory interpretation. The cert petition doesn't cite Bailey, doesn't mention fraud. It would be quite out of the ordinary for this Court to remand for consideration of a question that the lower court considered waived and didn't decide, and that the Petitioner didn't even raise in the cert petition itself. So that's one answer. And the second point is that if we don't agree with you that this is under the rubric of equitable tolling, I mean, I thought Justice Scalia was very clear when he said the discovery rule, as a general matter, doesn't toll when your statute of limitation triggered by the, what was it, the occurrence of the violation. But he said there is an exception to the non-application of the discovery rule for fraud. We have recognized historical, historical exception for cases based on fraud. Justice Ginsburg, the Court, and it pains me to say this, Justice Scalia, have not always been precise in their use of this terminology. But where it has mattered, the Court has not always been precise in their use of this  use of this terminology. But where it has mattered, where it has been dispositive of an issue such as in A&Z, the Court has been careful to distinguish between equitable doctrines, equitable tolling, and the discovery rule. And that is really the only way to read these cases, Bailey and Holmberg and Exploration Co. They are best understood as equitable cases because throughout those opinions the Court is talking about the exercise of traditional equitable powers. And those cases are not engaged in statutory interpretation. If you look at a case like Bailey or Holmberg, it is not doing the same thing as TRW. It's not even, Holmberg, for example, is not even asking the question, how do we parse the words liability arises? Or in Bailey, I think it was cause of action accrued. It's not even a question of what that language means. It's simply creating an exception to it. And that is the better way to understand those cases. In any event, even if there were some sort of a fraud discovery rule, that still wouldn't help here for three reasons, one of which is the waiver, which I've talked about. Two, even if there is a background – even if there were a background fraud discovery rule, Congress could still overcome that. It would still only be a presumption. And the language that Congress used here, violation occurs, would overcome any common law discovery rule. Do you really think that? Sotomayor, if a patent issued, which is like when a violation occurs, we still apply the equitable doctrine, the concealment doctrine in Exploration, even though the languages are almost identical. So how do you separate Exploration from here? Because I think what the Court was doing in Exploration Co. is best understood as equitable tolling, not as reading that language about the patent issuing to mean patent issuing or is discovered. This goes to the fundamental question, what is the Court doing? Is it interpreting language like patent issued or violation occurred to mean something other than what it says, or is it exercising the Court's inherent equitable power to override what the language says? Sotomayor, are you saying there's no self-concealing fraud whatsoever? That the very act that you do – this is what they're claiming – the very act that you are alleged to have done doesn't – wouldn't qualify? Assuming – and I know that you take issue with whether you really knew that was his address or not, and whether the lawyer just made a mistake in not seeing his own files. I want to put all of that aside. Let us assume, for the sake of argument, that the lawyer knew this wasn't the address, that the lawyer knew the process server had affected sewage service, and yet he lied – intentionally lied to the Court and held on to his judgment until the statute of limitation passed. Do you believe that there's no common law self-concealing fraud there? I don't think that that is common law self-concealing fraud. I think that that might well qualify for equitable tolling. You don't need to put the fraud label on it for it to be equitable tolling in a case where the Court actually decided that equitable tolling was properly presented and preserved. But I don't think that that would be common law fraud, because it does not involve an intentional misrepresentation. That's not alleged to the defendant. But to the Court, it's still conduct that would be fraudulent, maybe not on the defendant, but certainly on the Court. And why should that deprive the defendant of a cause of action? Perhaps it shouldn't if that's what's actually alleged and if it's dealt with as equitable tolling, rather than – rather than reading language like violation occurs to trigger the limitations period upon anything other than when the violation occurs. With respect to this case, though, it's not just the waiver in this Court and in the Third Circuit. I'd also direct the Court to the complaint in this case. It's a three-page complaint, and it's in the Court of Appeals Appendix at 6A. The operative complaint itself does not allege what is now being described as so-called sewer service. The operative complaint alleges that the debt collection lawsuit here was filed out of time and that as a result of the – as a result of what happened with the improper service, the plaintiff was entitled to equitable tolling on that claim because he didn't learn of the untimely lawsuit. So on a 12B motion, which is what we're dealing with here, we are miles removed from the sorts of allegations in some of the amicus briefs about different cases involving sewer service. Can I make sure I have the terminology correct? Sorry, on a couple of the legal points. So on the discovery rule, there's a discovery rule linked to fraud, as Justice Ginsburg said. You first look to whether it's in the statute. You say no. If it's not in the statute, if you're correct about that, you see if there's some kind of – there's an equitable discovery doctrine also linked to fraud that can apply, but your argument is that no equitable doctrines were raised here and therefore we shouldn't consider the scope of how that might apply. Is that accurate? I think that would be a good opinion. Okay. The other part of that is you were making an argument that the words of the statute here expressly displaced equitable discovery, and I think that's a shakier argument, because that would mean any time it's not in the statute itself, it's also meaning discovery, it's also expressly displaced. You don't need this argument to win, but you were giving it as an alternative, and I want to press you on that. So that's actually not the argument that I am intending to make. Okay. I don't think that Congress needs to expressly say no discovery rule in order to foreclose the discovery rule. If you had more ambiguous language. I know you're not saying that. In order to foreclose an equitable doctrine. You don't think that Congress has to say no equitable doctrines. But even for the statutory discovery rule, I don't think Congress has to expressly foreclose a statutory discovery rule in a situation where, let's say, you had language like that. I agree with you on that, on the statutory discovery. Okay. So I'll just assume I'm with you. Okay. But there still exists, I think you just said, a kind of equitable discovery rule, unless Congress has displaced that. And I would assume there's a higher bar for Congress to expressly displace the equitable discovery than there is for whether it's in the statute in the first place. I agree. And the only tweak that I would make to, I think, the way that you formulated all of that, I view the equitable discovery rule just as a species of equitable tolling. Got it. If, like Judge Posner, you want to list out all seven different kinds of equitable doctrines that allow a court to override what Congress has written, that would be one of them. But I think the more helpful way to think of it is that there are two categories. There's statutory interpretation. What has Congress provided as the rule to apply across the statute in every FDCPA case? As to that question, violation occurs means violation occurs, not discovered. Then there's another bucket of various equitable doctrines that can be invoked under the court's authority to override statutory language. None of those are presented. I think that that distinction is helpful, but I want to push back on it a little, because it's all statutory interpretation, isn't it? I mean, as long as we understand that Congress could say, and no equitable doctrines shall apply either, then in some sense we're doing statutory interpretation even when we say that Congress didn't displace equitable doctrines, aren't we? Sure. There's always the question of whether Congress has overridden the longstanding equitable power of the court to itself override the statutory terms that Congress has used. So there is a statutory interpretation question there. But the difference between the equitable doctrines and the discovery rule, as I'm using that term, is that there is a presumption in favor of the availability of the court's equitable powers, and there's a higher bar that Congress has to use in order to foreclose that, if we're in the equitable bucket. You need something akin to a plain statement to get rid of the equitable doctrines in the statute. You probably are going to frown on the phrase plain statement, but something clearer. Something clearer. This Court has often looked to the sort of two-part structure. Because they're equitable, so we're not going to assume silence displaces these equitable doctrines, right? Correct. You're not going to assume silence does. But this Court has typically looked to a sort of two-part structure, where you would have a shorter discovery-based limitations period, coupled with a longer statute of repose. And if you have that, this Court has read into that sort of situation that Congress meant to displace equitable powers. Thank you, counsel. Mr. Bond. Mr. Chief Justice, and may it please the Court. The question on which this Court granted review, and the only question the Third Circuit decided, is whether the FDCPA should be interpreted to impose a statute-wide rule that the limitations period does not begin to run until a violation is discovered. That's a question about what the statute means, and the text supplies a clear answer, no. Now, Petitioner appears to be abandoning reliance on that broad theory and is now relying exclusively on this argument from Bailey's fraud rule. We agree with Respondent that Bailey's fraud rule does not apply in this case, at least as it's been teed up for the Court, for three reasons, or three points I'd like to make. Now, first, we agree with Respondent that the fundamental distinction that matters is between interpreting the way a statute of limitations operates and equitable relief from that statute. It's the distinction this Court drew in ANZ in describing American Pipe. You've got interpreting and enforcing statutes, and you've got equitable relief from the operation of the statute. And it's true that those are all statutory interpretation questions, but they're very different questions, because on the one hand, a discovery rule that comes out of the statute has to be in the text and context of the statute, whereas equitable relief, whether it's viewed as one umbrella doctrine or subdivided into several different species, are all exercises of courts' traditional freestanding power as courts of equity to relieve parties from the operation of a statute. We agree with Respondent that that difference matters, not just with respect to how clear a statute must be to displace or make clear that that doctrine doesn't apply, but also the scope of the rule that results, as the Court observed in Rotella. So to put it in terms of Judge Posner's opinion in COTA, the first category of statutes, accrual rules set forth in the statute, that's our first bucket. Everything else fits into that second bucket, and it's simply a question of whether you subdivide into subsidiary categories or not. Now, the second point is where Bailey fits in this taxonomy. Now, we acknowledge that language in the Court's opinions over the past number of years have sent some mixed signals. To the extent you address it here, we think the better view is that those cases are understood as applications of equitable principles, whether equitable tolling or a close cousin, for three reasons. First, the rule arose at equity, starting in courts of chancery and later carried over to courts of law. Second, that's really the only way to understand cases like Exploration Company, where the statute, by its terms, doesn't run from discovery, doesn't leave room for a discovery rule. That can't be read to impose a discovery rule, but it certainly can be understood not to displace background equitable principles. And third, the Court has repeatedly and recently cited Bailey and Holmberg and other cases, including in contexts where it mattered, as Mr. Deretsky was explaining, on the equitable side of the line. The most recent example, as he noted, is ANZ, and in that case it mattered whether American Pipe was equitable or statutory in nature, and the Court relied on the fact that American Pipe had cited Holmberg, which ANZ called a paradigm application of equitable tolling. So we think the Court's most recent and repeated word on this is that it falls on the equitable side of the line. Even if you think there are cases where there are you have an ambiguous statutory provision and you can look to equitable principles to help you figure that out, that's fine, but the underlying principle is still equitable in nature. And that would be like the Court's opinion in Merck, where you had an express discovery rule and the question is what does discovery mean? So the Court surveyed equitable practice, State statutes, and all manner of things that were relevant to figuring out what Congress meant in that provision. Sotomayor, do you think that that equitable principle is the same as the way the Court has defined equitable tolling, meaning we have very strict construction under equitable tolling and certain elements to it? Do you think the same apply more broadly to all the equitable principles, or is it a separate principle altogether? So our view, and I'm not sure anything turns on it here, is that it's a subset of that broader equitable principle. You might think of it in terms of the kind of fraud that satisfies Bailey, which is fraud that is either concealed affirmatively or self-concealing, satisfies by itself the extraordinary circumstance requirement of tolling. And then the second element, diligence, is just the same across both contexts. So it seems like a subset of the broader principle of equitable tolling, which explains why the Court's decisions in cases where it mattered, not just in ANZ, but in Lampf and in Rotella, described cases like Holmberg and Bailey as falling into this bucket. So we understand it to fall in the equitable tolling or the equitable relief side of the line, but at the end of the day, to decide this case, I don't think you need to resolve that particular question. If it's any kind of equitable relief, I think Petitioner has disclaimed reliance on that and certainly didn't present that below or in the petition. But even if you think it's a statutory rule that could be read in to every statute, we don't think this falls within the category of fraud claims. As Mr. Javitsky was explaining, I don't think the complaint here, the single allegation that concerns improper service, paragraph 14 of the complaint, doesn't allege any kind of misrepresentation, isn't premised on fraud. And to the point of amendment, when the district court asked Petitioner's counsel if he would like to amend, and this is at page 104A of the Court of Appeals Appendix, volume 2, Petitioner's counsel emphatically said no. So I think that ship has sailed. Ultimately, we don't have a strong interest in whether you apply that rule here or leave it to the Third Circuit, but I think respect for the Court of Appeals and the integrity of the certiorari process suggests that you should take the Petitioner, the petition at its word, and decide the case on those terms. If the Court has no further questions. Kagan. Why does it matter that it is a fraud claim, rather than whatever the claim is, fraud has been used to prevent the plaintiff from noticing it? So if you understand Bailey as an application of more general equitable principles that grant relief not just from fraud, but from fraudulent concealment and other kinds of extraordinary circumstances like the earthquake, then we don't think it does matter. Bailey, I think, is best understood as applying those general principles in the particular context that was recurring at the time of fraud claims. So if you understand it that way, there is no rigid boundary. Bailey is simply explaining how those general principles apply in a particular setting. If instead you understand Bailey, however, as a rule of statutory interpretation that departs from the way we ordinarily read statutes, then we would suggest you should apply that exception, that departure, on its own terms rather than expanding it, as I think Petitioner had suggested in the briefing. But again, if you understand it as an application of equitable principles, you don't need to draw a line between the development of the underlying claim, which Bailey focused on, the object or foundation of the suit, or other examples like Holmberg, which wasn't a fraud action but involved fraudulent concealment. If you view those cases of a piece as involving general principles of equitable relief, then everything hangs together. If the Court has no questions. Roberts, thank you, counsel. Five minutes, Mr. Gant. Thank you, Mr. Chief Justice. Perhaps ambitiously, I will try and quickly make five points that I hope address some of the questions raised by the Court this morning. First, there is no question that this Court, although when Bailey and Holmberg were decided, didn't use the label discovery rule, in more recent cases like Merck and Gabelli, has clearly identified a discovery rule which I think under the best reading is separate from equitable tolling. The second point is that there is an argument advanced in the briefs and today by both counsel for the Respondent of the United States that the issue is whether a statute is all or nothing. Either a common law discovery rule applies to every claim under the statute or to none at all. That view is unsupported and contradicted by Bailey exploration and Holmberg itself. Bailey was a bankruptcy court, a Bankruptcy Act case. Exploration dealt with a statute concerning land patents and Holmberg concerned the Federal Farm Loan Act. Those were not cases the Holmberg-Bailey rule applied to a subset of cases under the statute where the doctrine otherwise applied. It wasn't all or nothing, as my friends suggest. The third point concerns confusion about the relationship of the doctrines. Mr. Bond said that the Court has in the past sent mixed signals. I think that's a fair characterization and I think that unfortunately those mixed signals cause confusion both on the part of the parties and in the courts below. In Gabelli and Footnote 2, this Court observed that the Second Circuit in the case being reviewed had, had, was adding to an equitable tolling claim the requirement that there be some action in addition to the cause of action that caused the concealment. That is the same idea that is present in Footnote 5 in the Third Circuit's decision below, where what the Third Circuit said, and this wasn't, this was for the Court. It wasn't just on behalf of those four members who would have wished to review equitable tolling. The Court as a whole said our precedent has not previously recognized that a defendant's self-concealing conduct may be the basis for equitable tolling. So the Third Circuit, which, by the way, had gone on bank sua sponte, was recognizing that previously its own cases had said that there had to be some additional acts, not that self-concealment alone was insufficient for equitable tolling. That was the reason why that equitable tolling was not pressed below, because under existing Third Circuit law there was a requirement for some additional action which Petitioner's counsel did not believe was present here. The next point concerns this question of whether the discovery rule is a matter of an exception, an equitable exception to a statute which is imposed by courts themselves, or whether it's statutory interpretation. The touchstone in either case, as Justice Kagan, I believe, was alluding to, is congressional intent. And we believe that Congress here, when you look at the statute as a whole, not ignoring this language in 813d, but the statute as a whole, including its purposes, including its exhortation that it wanted to eliminate the practices at issues, clearly would not have meant to foreclose a lawsuit by which presented facts like Petitioner's facts here. The final point I'd like to raise concerns – oh, sorry, one other point related to that. I believe I heard counsel for the Respondent say that under his view, the discovery rule is a subset of equitable tolling. I could understand why one would come to that view, given the confusion in the doctrine. I've set out a different view, which we think is the better understanding. But if their view is correct, then I don't know how they can argue it was waived. If the discoverer, the Holmberg-Bailey rule, is a subset of equitable tolling, we pressed the Bailey-Holmberg rule below. Those cases were cited in the supplemental briefing after the Court decided to go en banc. So I think the assertion that the arguments that were presented here were waived are incorrect. The final point concerns Respondent's challenge to the sufficiency of the complaint. The district court in the Third Circuit here understood exactly what was at issue. I must candidly acknowledge that the complaint here was not a paragon of clarity. It could have been done better. And if we were given the opportunity on remand, which we would because Rule 15 provides for a liberal amendment of pleadings, we would make clear that the challenge of the defendant's conduct violates 1692 E and F of the statute, which we believe clearly falls within the ambit of the common law discovery rule. Unless the Court has further questions, I thank you. Roberts. Thank you, counsel. The case is submitted.